## SAMUEL W. FULLERTON v. KENNEDY and FOSTER.

Where a person entrusts to a merchant engaged in trade in Western produce on his own account, and also as a factor, a sum of money to be invested in whiskey, and the merchant accordingly buys and keeps stored in his own name a large quantity of the article, giving the party thus advancing a memorandum of the purchase, which he neglects having placed to his account in the warehouse, the merchant, having the *indicia* of ownership, will be regarded as the real owner so far as *third persons* are concerned.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J. *R. Mott* and *C. Roselius*, for plaintiff. *Wolfe* and *Singleton*, for defendants. The judgment of the court was pronounced by

EUSTIS, C. J. This is an appeal taken by the defendants from a judgment rendered against them in the Third District Court of New Orleans. The learned judge kept the case for a long time under advisement, under the hope, as he states in his opinion, that his researches would lead him to some legal ground on which relief might be extended to the defendants, as he considered it essential to the security of commercial dealings and to the protection of good faith. In his researches, however, he came to the conclusion that the defendants could not be relieved, and gave, though with great reluctance, judgment against them.

*Fullerton*, the plaintiff, was, at the time of the transactions which gave rise to the present suit, in the steamboat business; he had his office in the building, No. 93 Tchoupitoulas street in the Second Municipality. He was in New Orleans during the whole month of February, March, and up to the 15th of April, 1847, when he purchased a plantation, and passed most of his time there. *Fullerton's* office was up stairs. Below was the counting-house of *William A. Bennett*, who was doing business on his own account, as a merchant. He had been doing business as a merchant in New Orleans for several years, and was engaged in buying and selling. He was known as a produce commission merchant and a dealer in western produce. There was an intimacy between *Fullerton* and *Bennett*, such as exists between persons in the same house.

The defendants, *Kennedy* and *Foster*, are merchants in New Orleans, doing a general commission business, making advances on consignments, &c. They were in the habit of making advances also on produce deposited in warehouse.

On the 12th of March, 1847, *Kennedy* and *Foster* made an advance to *Bennett* of five thousand dollars in their notes on 778 barrels of whiskey stored at *Orr's* warehouse, for which *Bennett* then transferred to them the warehouse receipt. *Kennedy* and *Foster* paid their notes; and after a delay, the cause of which it is not material to notice, they sold the whiskey, with the exception of a few barrels, and applied the proceeds to the payment of their advance.

*Bennett* in the mean time had failed, and left the city in the latter part of May. *Bennett's* clerk gave *Fullerton's* clerk in the month of June an order for the barrels of whiskey, which were still in the warehouse of *Orr*, but the latter made no demands of the defendants for them, considering it unnecessary to insist on the delivery of so small a quantity; and as the counsel in argument have made no distinction between these and the rest of the lot, the case will be considered on the obligations and rights of the parties to the whole lot.

In the month of February, 1847, at three different times, the plaintiff gave *Bennett* money amounting in all to the sum of sixteen thousand dollars, for the purpose of purchasing whiskey for him, and shortly afterwards, under date of the 15th of February, *Bennett* rendered an account to the following effect: Memorandum of 1920 barrels of whiskey purchased by *Wm. A. Bennett* for account of *S. W. Fullerton*. The dates, the names of the sellers, the number of barrels and quantity, the price of each lot, and the aggregate are then given, together with the total cost, $16,021 64. The warehouses in which the whiskey is stored, in four several lots, are then named and the memorandum is signed by *Bennett*.

The present action is instituted to recover from the defendants one of the lots of whiskey, 778 barrels stored in *Orr's* warehouse, or its value. The ground of the action alleged is, that the whiskey was, at the time of the advance made by the defendants, the sole property of the plaintiff, and that the defendants knew the fact; that *Bennett* had no right to pledge the whiskey, as it is charged he did, to the defendants; and that they acquired no rights under their contract with *Bennett* in relation to it, except such as were subordinate to the right of property of the plaintiff.

There is no evidence that the defendants had any knowledge or notice of the interest of the plaintiff in the whiskey until the demand for the remnant of the lot was made on the warehouseman by the plaintiff's clerk, as before stated: indeed, we find nothing in the evidence impugning in the slightest degree their good faith. The plaintiff's case stands before us on the payment of the money by him to *Bennett* to be laid out in whiskey, and on the account or memorandum

40

before recited; and the defence rests upon the *bona fide* advance, the delivery of the property, and the sale made by the defendants for the purpose of reimbursing themselves. At the time of these transactions, *Bennett* was a dealer in whiskey, and bought largely on speculation. The defendants in February had advanced the sum of ten thousand dollars to him on two lots of the article, one of which corresponds in number—778 barrels—to that which is the subject of the present suit. Witnesses have been examined from whom in that season *Bennett* made purchases of whiskey. They were all made in his name, nor does it appear that the purchases made by *Bennett*, which it is alleged were paid for with the plaintiff's money, were made differently or could be distinguished in any one particular from those conceded to be made by *Bennett* on his own account. No difference is attempted to be established by the evidence.

On the subject of the relations between *Fullerton* and *Bennett*, which, from the general aspect of the case we think ought to have been explained, the testimony is meagre and unsatisfactory. It is in evidence that subsequent to the purchase of the whiskey there were business transactions between them. The plaintiff's principal witness states that he is not aware that *Bennett* paid over any money to *Fullerton* after this transaction, unless it were for some previous transaction. It does not appear that the accounts between them were ever settled, and as to what is their state there is no evidence before us. In a case of this kind, as the plaintiff alone can be in possession of the facts, it is but natural to look to him for the information, or for some proper reason for its not having been given. But giving to this omission no other consequence than one of the facts of the case, they present a state of things which we think brings it within principles which we have on several instances been called upon to enforce.

No change of the possession of the whiskey was made by *Bennett* until its delivery to the defendants. It remained in his name in the warehouse on storage. The plaintiff, under the evidence, appears knowingly to have enabled *Bennett*, who was known in the market as a dealer and speculator at that time in the article, to appear in the market with his, the plaintiff's, property as his own, with possession and the muniments of title in his own name, and without the public having any possible means of discriminating between the plaintiff's property and that in which he was speculating on his own account. Suppose the defendants to have been put on their inquiry. The different sellers of the article from whom *Bennett* had purchased, and the warehouse books would have corroborated the warehouse receipts and the assurance of *Bennett* that the property was his own.

The opportunity which the plaintiff every day had of knowing the movements of *Bennett*, the business between them, the risk which always accomplishes large speculations, ought to have cautioned the plaintiff against permitting *Bennett* to have the benefit of the credit which the possession of this property under the circumstances necessarily gave to him and which he might abuse.

There is no evidence as to the purpose for which the plaintiff advanced money for the purchase of the whiskey, whether it was on speculation, for sale or shipment; nor is any reason assigned why it was bought and retained by *Bennett* in his own name. None of the ordinary purposes of commerce required the property to be kept in this condition. The circumstance to which we have previously alluded, that some portion of the whiskey remained unsold at the time *Kennedy* and *Foster* were apprized of the plaintiff's claim, would confine the claim to this portion. For that part which was sold, of which the proceeds

were applied to the payment of their advance, there being no fraud on the part of the defendants, and no notice whatever of any pretensions of the plaintiff in relation to the right of property, our impressions would be that the plaintiff's action must fail. We state this to prevent any misconception which might result from deciding on the principle which controls the whole case, without reference to this matter of defence.

It appears, from the dates of the purchases in the memorandum which the plaintiff has offered in evidence, that about the time *Bennett* purchased other lots of whiskey from different merchants in the city, and it not appearing that any other acknowledgment was given by *Bennett* to the plaintiff than the memorandum, it follows that the plaintiff had no means of knowing which lot was bought for him until the delivery of the memorandum. This state of facts closely assimilates the transaction between these parties to a sale on the part of *Bennett* of the lots of whiskey he assigned for the plaintiff's use; and there being no sign of any delivery whatever, it is assimilated to the case of a vendor after the sale retaining possession of the thing sold, and subjected to the consequences of the vendor's retaining possession.

On a very thorough consideration of the facts in evidence, we cannot consider it other than an ordinary case in which a man puts his property in the possession and name of another, and thereby voluntarily subjects it to the obligations which persons in good faith contract in relation to it. Were the property real estate, under such circumstances, we should hold it liable to seizure for debts of the ostensible owner and of the mortgages created by him upon it. *Foster's Heirs* v. *Foster's Administrator*, 11 L. R. 408. *Stockton* v. *Craddick*, 4th Ann. 285. *Dozier* v. *Squires*, 13 L. R. 130. As it does not appear that *Bennett* held the property under any commercial relation of consignee, factor or bailee, it appears to us necessarily to fall under the condition of being in the open, public and exclusive possession of *Bennett*, and thereby subjected to his right of ownership, so far as respects all persons dealing with him in relation to it in good faith. *Pickering* v. *Bust*, 15 East. Rep. 37. *Packard* v. *Sears*, 33 Common Law Rep. 115. *McMasters* v. *Commissioner of Atchafalaya Bank*, 1st Ann. 11. *Leverich, Executor*, v. *Richards*. Ib. 348. *Moore* v. *Lambeth*. 5th Ann. 69. *Conner* v. *Hill*, ante p. 7. *Gregg* v. *Wells*. 37 Common Law Rep. 54.

To decide that the plaintiff could recover in the present case from the defendants, without any evidence of the state of the accounts between the plaintiff and *Bennett*, would sanction a principle which would put it in the power of persons in this situation to commit a fraud. They might have been paid or have taken security from their faithless agent, and still exact the same debt from a party in good faith who had purchased the property.

The contract being perfectly fair and mercantile between the defendants and *Bennett* for the advance made by them, we think the plaintiff has nothing to do with its forms, and that situated as he is, he can only claim the rights which *Bennett* himself had; he is bound by *Bennett's* acts as apparent owner of the property.

The judgment of the district court is therefore reversed, and judgment rendered for the defendants, with costs in both courts.